**LEWIS BRISBOIS BISGAARD & SMITH LLP**
LEO A. BAUTISTA, SB# 149889
  leo.bautista@lewisbrisbois.com
JOSEPHINE A. BROSAS, SB# 239342
  josephine.brosas@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Phone: 213.250.1800 • Fax: 213.250.7900

*Attorneys for Plaintiff*
WATERS EDGE WINERIES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WATERS EDGE WINERIES, INC., A CALIFORNIA CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>WINE VIBES, LLC a Texas limited liability company; SHERIFAT LAWAL, an individual; TAMESHA HAMPTON, and individual; PHELICIA COLVIN, an individual and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.<br><br>**WATERS EDGE WINERIES, INC.'S COMPLAINT FOR:**<br><br>(1) Breach of Contract<br>(2) Trademark Infringement and False Designation of Origin under 15 U.S.C. § 1125(a)<br>(3) Trademark Infringement under 15 U.S.C. § 1114;<br>(4) Misappropriation of Trade Secrets under the Defend Trade Secrets Act (18 U.S.C. §1831, et seq.)<br>(5) Misappropriation of Trade Secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1 et seq.<br>(6) Unfair Competition Under California Business & Professions Code §§ 17200, et seq.,<br>(7) California Common Law Unfair Competition.<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Waters Edge Wineries, Inc., a California corporation, ("Plaintiff" or "Waters Edge") hereby alleges the following against WINE VIBES, LLC a Texas limited liability company ("Wine Vibes"), SHERIFAT LAWAL, an individual ("Lawal"), TAMESHA HAMPTON, an individual ("Hampton"), and PHELICIA COLVIN, an individual ("Colvin"), (collectively, "Defendants"):

## PARTIES

1.      Plaintiff, Waters Edge is California corporation with its principal place of business in Rancho Cucamonga, California.

2.      Defendant, Wine Vibes is a Texas limited liability company with its principal place of business in Pearland, Texas. On information and belief, <u>Defendants Lawal, Hampton and Colvin are all of the members of Wine Vibes.</u>

3.      Defendant Lawal is an individual.  On information and belief, Lawal is a resident of Pearland, Texas.

4.      Defendant Hampton is an individual.  On information and belief, Hampton is a resident of Pearland, Texas.

5.      Defendant Colvin is an individual.  On information and belief, Colvin is a resident of Pearland, Texas.

6.      On information and belief, at all times mentioned herein, Defendants, and each of them, were the agents, servants and employees of each remaining Defendant and were, in doing the things complained of, acting within the scope of their agency and/or employment, and acting with the full knowledge or subsequent ratification of the other defendants, their principals and/or employers.

## NATURE OF ACTION, JURISDICTION AND VENUE

7.      This is an action for 1) breach of contract; 2) trademark infringement and false designation of origin under 15 U.S.C. § 1125(a); 3) trademark infringement under 15 U.S.C. § 1114; 4) misappropriation of trade secrets under the Defend Trade Secrets Act (18 U.S.C. § 1831, et seq.) ("DTSA"); 5) misappropriation of trade secrets under the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

California Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1 et seq. ("CUTSA"); 6) unfair competition arising under California Business & Professions Code §§ 17200, et seq.; and 7) California common-law unfair competition.

8.     The Court has original subject matter jurisdiction over the claims that relate to trademark infringement and false designation of origin, and that relate to the DTSA, pursuant to 15 U.S.C. §§ 1116 and/or 1121(a), and 18 U.S.C. § 1831, et seq. and pursuant to 28 U.S.C. §§ 1331 and 1338 as these claims arise under the laws of the United States. The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.     This Court also has federal diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446.  Specifically, this Court has federal diversity jurisdiction pursuant to § 1332 because: (1) the amount in controversy exceeds $75,000.00 exclusive of interest and costs; and (2) there is complete diversity between Plaintiff, Waters Edge on the one hand, and each of the Defendants on the other.

10.     This Court has personal jurisdiction over Defendants because they have had sufficient continuous and systematic minimum contacts with California that they foresaw the possibility of being sued in this state, including but not limited to, entering into the Franchise Agreement and Personal Guarantee that is the subject of this dispute and provides for jurisdiction in federal court in California. Section 12.A. of the Franchise Agreement states that any dispute arising under, our of, in connection with or relation to the Franchise Agreement "must be instituted in the United States District Court for the Central District of California." [Ex. A, § 12.A.] Section 12.B. of the Franchise Agreement also states that "subject to [Waters Edge's] rights under federal trademark laws, the parties agree that California law shall govern any Proceeding brought pursuant to Section

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  12(A) except that the non-compete provisions of Section 10(D) shall be governed by the

2  laws of the state in which the store is located." [Ex. A, § 12.B.]

3       11.    The United States District Court for the Central District of California is the

4  proper venue for this action because the franchise agreement specifically provides that

5  "any dispute, suit, action or proceeding for damages or any request for injunctive,

6  declaratory or other equitable relief between [Defendants] and [Plaintiff] arising under,

7  out of, in connection with or relation to [the Franchise Agreement]" or "performance or

8  breach of [the Franchise Agreement], the parties' relationship, or the business must be

9  instituted in the United States District Court for the Central District of California." [Ex.

10  A, § 12.A.]

11       12.    On or about December 10, 2020, Lawal, Hampton, and Colvin each

12  executed  a Personal Guarantee and Agreement to be Personally Bound by the Terms

13  and Conditions of the Franchise Agreement (the "Personal Guarantee"). Pursuant to the

14  Personal Guarantee, the individual Defendants agreed to be "personally bound by every

15  condition and term contained in the Franchise Agreement" and that the Personal

16  Guarantee is to be construed  as though "each of them executed a Franchise Agreement

17  containing the identical terms and conditions of this Franchise Agreement."

18                 **GENERAL ALLEGATIONS**

19       13.    Waters Edge is a national franchisor of wineries that sell various wines,

20  bistro food items, and wine accessories to consumers. Waters Edge's principals have all

21  been involved in the wine business since 2004 and, as a result, offer an abundance of

22  knowledge in the retail wine industry and in the wine making industry.

23       14.    Through its franchise system, Waters Edge gives prospective small business

24  owners the opportunity to enter not only the retail wine and accompanying food industry,

25  but also the industry of crafting unique wines. Franchisees are granted the right to use

26  Waters Edge's Trademarks, system, and methodologies. In exchange, franchisees pay

27  Waters Edge royalty fees and abide by terms of the franchise agreement.

28

**LEWIS
BRISBOIS
BISGAARD
& SMITH LLP**
ATTORNEYS AT LAW

4856-2990-8794.2

**WATERS EDGE WINERIES, INC.'S COMPLAINT**

15.     The Waters Edge system includes the Waters Edge Winery Trademarks, recipes, formulas, manufacturing and storage procedures, food items, distinctive exterior and interior facility, layout, signage equipment, supplies, ingredients, business techniques, methods and procedures and sales promotion programs.

16.     Franchisees receive the benefit of being taught by people who know the industry and have almost two decades worth of experience in the wine industry and in the franchise industry. Franchisees also receive access to a wealth of confidential and proprietary written material in the form of guides, training manuals, and other instructive information which teach the Waters Edge wine making process and methods of operation.

17.     Lawal, Hampton, and Colvin were the ideal prospective franchisee. They were excited about the opportunity to own a winery, but had no experience in the wine retail or manufacturing industry. Waters Edge was to bridge the gap between their desire to enter the wine business and the reality of opening a winery near their home town.

18.     On or about December 10, 2020, Defendants' company Wine Vibes entered into a Franchise Agreement with Waters Edge (the "Franchise Agreement") for the operation of a Waters Edge winery franchise in the vicinity of Pearland, Texas.

19.     The effective date of the Franchise Agreement was January 1, 2021, which included Defendants' agreement to become a Waters Edge franchisee using the Waters Edge Winery Trademarks and system. A true and accurate copy of the Franchise Agreement is attached hereto as **Exhibit A**. Simultaneously,  Lawal, Hampton, and Colvin executed a Personal Guarantee and Agreement to be Personally Bound by the Franchise Agreement. The initial term of the Franchise Agreement is for a period of ten (10) years.  [Ex. A, § 4.A.]

20.     The approved location for the franchise under the Franchise Agreement was subsequently designated as 9018 Sienna Crossing Dr., Suite 100, Missouri City, Texas.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

21.     The opening requirements under the Franchise Agreement require that the Defendants' Store be opened and operating pursuant to the Franchise Agreement within 12 months after the Authorized Location is designated. [Ex. A, § 2.C.]

22.     The non-compete provision in the Franchise Agreement explicitly prohibits Defendants, during the term of the agreement, to "own, manage, operate, maintain, engage in, consult with or have any interest in any wine business (manufacture, wholesale or retail) other than the one authorized by [the Franchise Agreement], or any other agreement between [Waters Edge] and [Defendants]." [Ex. A, § 10.D.2.]

23.     The trademark use provisions under the Franchise Agreement provide that the Waters Edge Trademarks may be used "only in connection with such products and services as [Waters Edge may] specify" and only in the form and manner Waters Edge prescribes in writing. [Ex. A, § 3.B.]

24.     The construction requirements under the Franchise Agreement provide that Defendants "may not commence construction of the Store until [Defendants] have received . . . written consent [from Waters Edge] to [the] building plans and [the] design and décor layout." Defendants are also required to "construct and equip the Store in accordance with [the] current approved specifications and standards [of Waters Edge] pertaining to equipment, inventory, signage, fixtures and design and layout of the building." Defendants are also required to "use [the] designated construction management firm" of Waters Edge. [Ex. A, § 5.B.]

25.     The Franchise Agreement also contains several specific requirements which must be followed during the construction process and prior to opening. Section 5.B of the Franchise Agreement provides:

"[Defendants]must promptly after obtaining possession of the site for the Store: (i) have prepared and submitted for [Waters Edge's] approval basic architectural plans and specifications (not for construction) consistent with [Waters Edge' s] general atmosphere, image, decor, color scheme and ambience requirements as set

4856-2990-8794.2

5

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

forth from time to time in the Operations Manuals for a WATERS EDGE WINERY & BISTRO store (including requirements for dimensions, exterior design, materials, interior design and layout, equipment, signs and decorating); (ii) purchase or lease and then, in the construction of the Store, use only the approved equipment, fixtures and signs; (iii) complete the construction and/or remodeling, equipment, fixtures, furniture and sign installation and decorating of the Store in full compliance with plans and specifications [Waters Edge] approve[s] and all applicable ordinances, building codes and permit requirements without any unauthorized alterations; (iv) obtain all customary contractors' sworn statements and partial and final waivers." [Ex. A, § 5.B.]

26.     Section 5.B. of the Franchise Agreement continues stating:

"Any change to the interior or exterior decor or image, equipment or signage of the Store to be made after [Waters Edge's] consent is granted for initial plans, whether at the request of [Defendants] or of [Waters Edge], must be made in accordance with specifications that have received [Waters Edge's] prior written consent. [Defendants] may not commence such addition or modification until [Defendants] have received [Waters Edge's] written consent to [Defendants'] revised plans." [Ex. A, § 5.B.]

27.     Section 6.A. of the Franchise Agreement provides that:

"[Defendants] must use in the operation of the Store and in the preparation and manufacture of wine and other beverage products only the proprietary and non-proprietary ingredients, recipes, formulas, techniques, processes and supplies, and must prepare and sell wine and products in such appearance and packaging, all as [Waters Edge] specif[ies] in [its] most current operations material or otherwise in writing… All supplies, including containers and other customer service materials of all descriptions and types must meet [Waters Edge's] standards of uniformity and quality." [Ex. A, § 6.A.]

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

28.    Section 6.B. of the Franchise Agreement states that:

"[Defendants] must only use approved products, inventory (including ingredients), equipment, fixtures, signs, advertising materials, trademarked items and novelties, and other items (collectively, "approved supplies") in the Store as set forth in the approved supplies and approved suppliers lists, as [Waters Edge] may amend from time to time. [Ex. A, § 6.B.]

29.    Section 6.C. of the Franchise Agreement states: "[Defendants] must purchase and use the computer system that [Waters Edge] developed for the Store, including all future updates, maintenance, supplements and modifications (the "Computer System")." [Ex. A, § 6.C.]

30.    Section 7.B. of the Franchise Agreement provides that: "[Defendants] and [their] General Manager must attend remote training provided via the web as well as classroom training in Rancho Cucamonga, California (or any other location designated by [Waters Edge] in the future) and complete training to [Waters Edge's] satisfaction." [Ex. A, § 7.B.]

31.    Section 9.D of the Franchise Agreement states that: "[Defendants] must pay [Waters Edge] or [its] designee a monthly Added Service Fee of up to 5% of [Defendants'] Gross Sales, with a minimum payment of $250. . . . [Defendants] must begin paying the Added Services Fee ninety (90) days after [Defendants] sign the Lease Agreement, regardless of whether or not [Defendants'] WATERS EDGE WINERY & BISTRO store is open for business." [Ex. A, § 9.D.] Section 9.I. of the Franchise Agreement permits Waters Edge to impose a service charge of $50 for each delinquent payment." [Ex. A, § 9.I.]

32.    Pursuant to section 9.B. of the Franchise Agreement, "in consideration of the rights granted to [Defendants], [Defendants] must pay to [Waters Edge] or [its] designee a monthly Royalty Fee in the amount of 5% of Gross Sales." [Ex. A, § 9.B.]

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

33.     Section 10.A. of the Franchise Agreement states that: "[Defendants] agree to pay promptly when due: (i) all payments, obligations, assessments and taxes due and payable to [Waters Edge, its], affiliates and/or vendors, suppliers, lessors, federal, state or local governments, or creditors in connection with [Defendants'] business . ." [Ex. A, § 10.A]

34.     Under section 9.D. of the Franchise Agreement, Waters Edge has "the right to assess a fee of up to $2,500 per violation of any term, obligation or requirement of the Operations Manuals or [the Franchise Agreement.]"   [Ex. A, § 9.D.]

35.     Under the Franchise Agreement, Defendants also "acknowledge having received one copy of or access to the Operations Manuals for use during the term of [the Franchise Agreement]" and provides that Defendants "must at all times treat the Operations Manuals, and the information they contain, as secret and confidential, and must use all reasonable efforts to maintain such information as secret and confidential." [Ex. A, § 6.G.]

36.     Under further confidentiality requirements of the Franchise Agreement, Defendants agreed that they "may not, during the term of [the Franchise Agreement] or thereafter, communicate, divulge or use for the benefit of any other person or entity any Confidential Information, except to such employees as must have access to it in order to operate the Store." [Ex. A, § 6.H.]

37.     Confidential Information is defined in the Franchise Agreement to mean "all proprietary information, the software used in operating [Defendants'] Store, the Operations Manuals and other information communicated to [Defendants] in writing, verbally or through the internet or other online or computer communications, and any other knowledge or know-how concerning the methods of operation of the Store." [Id.]

38.     In breach of the above-referenced provisions of the Franchisee Agreement, Defendants have failed to live up to their obligations to Waters Edge.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

39.     In violation of the provision of the Franchise Agreement, Defendants have unilaterally repudiated all of their obligations to Waters Edge and have proceeded with the construction and operation of a winery business at 9018 Sienna Crossing Dr., Suite 100, Missouri City, Texas that, while mimicking a WATERS EDGE WINERY & BISTRO store and incorporating many of the wine making methods, equipment, and methods of operation taught to Defendants by Waters Edge pursuant to the Franchise Agreement, is not an authorized WATERS EDGE WINERY & BISTRO store, and on information and belief is to be, or is being, operated under a different brand name and trademark, in competition with Waters Edge and its chain of Waters Edge franchises.

40.     Despite the fact that Defendants' winery is not, in fact, a WATERS EDGE WINERY & BISTRO or in compliance with all of the Waters Edge specifications and operational standards, Defendants have promoted their operation as a Waters Edge franchise and used the Waters Edge Trademarks in connection with their business. Defendants have also falsely used the Water Edge Trademarks in their representations and applications submitted to State and Federal government agencies and have obtained active permits to build and operate a winery business and to engage in wine producing and blending at 9018 Sienna Crossing Dr., Suite 100, Missouri City, Texas representing that their business will be an authorized Waters Edge winery and operate under the trade name WATERS EDGE WINERY.  In fact, on information and belief, Defendants' winery business will not be, or is not being operated under the WATERS EDGE WINERY trade name and/or is not an authorized WATERS EDGE WINERY & BISTRO store.

41.     Despite failing to comply with their obligations under the Franchise Agreement, Defendants participated in and received the benefit of Waters Edge's proprietary and confidential Online Training sessions and also independently accessed and downloaded over 130 items of proprietary and confidential material detailing the training, approved suppliers, wine making techniques, policies and procedures, menu

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

items, recipes, equipment operating instructions, worksheets, sales and marketing and other detailed methods of operation of a WATERS EDGE WINERY AND BISTRO store.

42.    Defendants also received and maintain possession of the Waters Edge proprietary and highly confidential Operations Manual which contains such confidential information as the complete disclosure of Waters Edge's standard procedures, specifications, policies, rules and regulations, approved suppliers, and approved supplies lists, among other things which are essential to the operation of a Waters Edge winery business.    On information and belief, Defendants have used and disclosed this confidential and proprietary training, information, and documents belonging to Waters Edge for the construction and operation of Defendants' competing winery business at 9018 Sienna Crossing Dr., Suite 100.

43.    In violation of the provisions of the Franchise Agreement, Defendants have refused to coordinate any of the construction of their winery with Waters Edge and have failed to use the construction management firm designated by Waters Edge. Despite repeated requests, Defendants have also failed to submit for Waters Edge's approval their design and décor layout, and have failed to obtain Waters Edge's written approval of those plans or consent before commencing construction.

44.    On information and belief, Defendants have failed to construct and equip their winery business in accordance with all of Waters Edge's approved specifications and standards pertaining to equipment, inventory, signage, fixtures and design and layout of the building.

45.    Defendants have failed to attend classroom training in Rancho Cucamonga, California with their General Manager and to complete training to Waters Edge's satisfaction.

46.    Defendants have failed to pay to Waters Edge a monthly Added Service Fee of up to 5% of Gross Sales, with a minimum payment of $250 which was due

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

commencing ninety (90) days after Defendants signed the lease agreement for their business at 9018 Sienna Crossing Dr., Suite 100, regardless of whether or not Defendants' WATERS EDGE WINERY & BISTRO store is open for business.

47.     Upon opening of their winery, on information and belief, Defendants have failed to pay to Waters Edge a monthly Royalty Fee in the amount of 5% of Gross Sales.

48.     On information and belief, Defendants have failed to order required equipment and starting inventory only from approved suppliers and failed to receive written notification from Waters Edge that Defendants satisfactorily completed all pre-opening obligations and approval from Waters Edge for the opening date.

49.     Under section 12.D of the Franchise Agreement, Defendants agreed that "in the event of a breach or threatened breach of any of the terms of [the Franchise Agreement] by [Defendants], [Waters Edge] will forthwith be entitled to an injunction restraining such breach or to a decree of specific performance, without showing or proving any actual damage, together with recovery of reasonable attorneys' fees and other costs incurred in obtaining said equitable relief, until such time as a final and binding determination is made by the Court." [Ex. A, § 12.D.]

50.     The attorney's fees provision of the Franchise Agreement also provides that the prevailing party in any action or proceeding "arising under, out of, in connection with, or in relation to" the Franchise Agreement "shall be reimbursed by the losing party for all costs and expenses incurred in connection therewith, including reasonable attorneys' fees." [Ex. A, § 12.E.]

### FIRST CLAIM FOR RELIEF

### Breach of Contract

51.     Plaintiff restates and incorporates by reference, as if fully set forth herein, the allegations of the foregoing paragraphs 1 through 50.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

52.     On or about December 10, 2020, Wine Vibes  and Plaintiff entered into the Franchise Agreement for the operation of a WATERS EDGE winery in the vicinity of Pearland, Texas.

53.     Lawal, Hampton, and Colvin executed personal guarantees of Wine Vibe's performance of the Franchise Agreement.

54.     Plaintiff performed all of its obligations under the agreements except for those that it was excused or prevented from performing.

55.     Defendants materially breached the Franchise Agreement by failing to comply with their obligations under the Franchise Agreement, including, but not limited to, in at least one of the following ways:

a.     Defendants have unilaterally repudiated all of their obligations to Waters Edge and have proceeded with the construction for the operation of a winery business at 9018 Sienna Crossing Dr., Suite 100, Missouri City, Texas that, while mimicking a WATERS EDGE WINERY & BISTRO store and incorporating many of the wine making methods, equipment, and methods of operation taught to Defendants by Waters Edge pursuant to the Franchise Agreement, is not an authorized WATERS EDGE WINERY & BISTRO store, and on information and belief is to be, or is being, operated under a different brand name and trademark, in competition with Waters Edge and its chain of Waters Edge franchises.

b.     Defendants received and maintain possession of the Waters Edge proprietary and highly confidential Operations Manual which contains confidential information and disclosure of Waters Edge's standard procedures, specifications, policies, rules and regulations, approved suppliers, and approved supplies lists, among other things essential to the operation of a winery business.  On information and belief, Defendants have used and/or disclosed this confidential and proprietary training, information, and documents belonging to Waters Edge for the construction and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

operation of Defendants' competing winery business at 9018 Sienna Crossing Dr., Suite 100.

c. Defendants have refused to coordinate any of the construction of their winery with Waters Edge and have failed to use the construction management firm designated by Waters Edge. Despite repeated requests, Defendants have also failed to submit for Waters Edge's approval their design and décor layout, and have failed to obtain Waters Edge's written approval of those plans or consent before commencing construction.

d. On information and belief, Defendants have failed to construct and equip their winery business in accordance with all of Waters Edge's approved specifications and standards pertaining to equipment, inventory, signage, fixtures and design and layout of the building.

e. Defendants have failed to attend classroom training in Rancho Cucamonga, California with their General Manager and to complete training to Waters Edge's satisfaction.

f. Defendants have failed to pay to Waters Edge a monthly Added Service Fee of up to 5% of Gross Sales, with a minimum payment of $250 which was due commencing ninety (90) days after Defendants signed the lease agreement for their business at 9018 Sienna Crossing Dr., Suite 100, regardless of whether or not Defendants' WATERS EDGE WINERY & BISTRO store is open for business.

g. On information and belief, Defendants have failed to pay to Waters Edge a monthly Royalty Fee in the amount of 5% of Gross Sales.

h. On information and belief, Defendants have failed to order required equipment and starting inventory only from approved suppliers and failed to receive written notification from Waters Edge that Defendants satisfactorily completed all pre-opening obligations and approval from Waters Edge for the opening date.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

56.     Waters Edge has been damaged by Defendants' breaches to the Franchise Agreement. Waters Edge is entitled to an award of damages in an amount to be determined at trial.

57.     The non-compete provision is no more restrictive than necessary, it contains reasonable limitations as to time, geographical area, and scope to protect the legitimate interests of Waters Edge, and the provision is reasonable and necessary to protect Waters Edge's legitimate interests during the term of the Franchise Agreement.

58.     Waters Edge is likely to succeed on the merits of its claim for breach of contract for Defendants' unlawful use of Plaintiff's trademark, violation of the non-compete provision, and misuse of proprietary and confidential information. Plaintiff has no adequate remedy at law for these violations. Moreover, Defendants' breach of the Franchise Agreement threatens Waters Edge with irreparable harm in the form of, among other things, loss of control of the manner of use of the Waters Edge Trademarks, loss of control of Waters Edge's proprietary and confidential information and trade secrets, inability to control the use of Waters Edge's proprietary information and know-how by a competitor. Accordingly, Waters Edge is entitled to preliminary and permanent injunctive relief, the issuance of which does not violate public policy.

59.     Waters Edge is also entitled to reasonable attorneys' fees and costs pursuant to the terms of the Franchise Agreement.

### SECOND CLAIM FOR RELIEF

### Trademark Infringement and False Designation of Origin

### (15 U.S.C. § 1125(a))

60.     Plaintiff restates and incorporates by reference, as if fully set forth herein, the allegations of the foregoing paragraphs 1 through 59.

61.     Since at least 2013, Waters Edge has used the trademark WATERS EDGE WINERY in commerce in advertising for its services, on its signage for its goods and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

services and in connection with its brick and mortar locations as well as promotional materials and in social media.

62.     Waters Edge is also the owner of federal registrations in the United States Patent and Trademark Office: WATERS EDGE WINERY, Registration 4,471,672; WATERS EDGE WINERIES and design, Registration 4,845,472;  WATERS EDGE WINERY& BISTRO and design, Registration 5,861,627 (collectively, the Waters Edge Trademarks").

63.     Waters Edge has developed the Waters Edge Trademarks at great expense and such are valuable and irreplaceable assets.  Waters Edge has invested substantial sums in advertising and promotion of its services under the Waters Edge Trademarks and such have come to be recognized as identifying Waters Edge and its services.

64.     Waters Edge has a vital economic interest in the protection and preservation of the Waters Edge Trademarks and the maintenance of the goodwill and reputation associated therewith.

65.     Defendants' wrongful and willful acts as articulated above constitutes false advertising, false designation of origin and unfair competition. Defendants' unauthorized use in commerce of Waters Edge Trademarks coupled with the other deceptive conduct identified above in connection with the operation of a winery, as alleged herein, is likely to cause confusion, to cause mistake, or to deceive consumers and government agencies as to the origin, source, sponsorship or affiliation of Defendants' services and is likely to cause consumers and government agencies to erroneously believe that Defendants' services are provided by an authorized Waters Edge winery franchise or in some way sponsored or approved by Waters Edge, when they are not.

66.     Defendants knew or should have known that their use of the Waters Edge Trademarks as alleged was likely to confuse and mislead consumers as to the source, sponsorship or approval of their services. Defendants were well aware that the complained of acts herein would result in consumers being confused.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

67.    As a direct and proximate result of the foregoing acts, practices, and conduct of Defendants, Waters Edge has been substantially injured in its business resulting in lost revenues and profits, and diminished goodwill and reputation.

68.    As a direct and proximate result of the foregoing acts, practices, and conduct of Defendants, Waters Edge has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill, and unless enjoined and restrained by the Court, Defendants will continue to engage in conduct in violation of the Lanham Act, and Defendants actions render the matter exceptional under 15 U.S.C. §1117.

69.    As a result of Defendants' acts, Waters Edge has suffered damages in an amount to be proven at trial but which exceeds $75,000.  Waters Edge is further entitled to attorneys' fees and costs, and the profits earned by Defendants attributable to their wrongful conduct.

### THIRD CLAIM FOR RELIEF

### Trademark Infringement (15 U.S.C. § 1114)

70.    Plaintiff restates and incorporates by reference, as if fully set forth herein, the allegations of the foregoing paragraphs 1 through 69.

71.    Defendants and each of them have infringed the Waters Edge Trademarks by way of Defendants' unauthorized use in commerce of the Waters Edge Trademarks and/or confusingly similar variations thereof, as alleged herein.  Such use is likely to cause confusion, to cause mistake, or to deceive consumers and government agencies.

72.    Defendants' acts, alleged herein, constitute willful federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

73.    By reason of Defendants' actions, Waters Edge has suffered irreparable harm to its valuable trademarks and the goodwill associated therewith.  Waters Edge has

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

been and, unless Defendants are preliminarily and permanently restrained from their actions, will continue to be irreparably harmed. Waters Edge has no adequate remedy at law and therefore seeks injunctive relief under 15 U.S.C. § 1116.

74. Defendants knew or should have known that their use of the Waters Edge Trademarks was likely to confuse and mislead consumers as to the source of their services.

75. As a direct and proximate result of the foregoing acts, practices, and conduct of Defendants, Waters Edge has been substantially injured in its business resulting in lost revenues, lost profits, loss of goodwill, diminished reputation and other damages in an amount to be proven at trial but which exceeds $75,000. The wrongful activity of Defendants also requires Defendants to pay their profits as a remedy pursuant to 15 U.S.C. §1117.

76. Defendants acts were willful and Waters Edge is entitled to recover reasonable attorneys' fees and costs under 15 U.S.C. § 1117.

### FOURTH CLAIM FOR RELIEF

### Misappropriation of Trade Secrets under the Defend Trade Secrets Act (18 U.S.C. §1831, et seq.)

77. Plaintiff restates and incorporates by reference, as if fully set forth herein, the allegations of the foregoing paragraphs 1 through 76.

78. The Defend Trade Secrets Act codified at Title 18, Section 1836 of the United States Code provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."

79. To fairly compete in the winery industry, Waters Edge has developed proprietary information including, but not limited to, Operations Manuals, proprietary ingredients, secret formulas and recipes, methods, procedures, suggested pricing, specifications, processes, materials, techniques, winemaking processes and/or franchise

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4856-2990-8794.2

17

operations used in the operation of a Waters Edge franchise (the "Waters Edge Trade Secrets"). The Waters Edge Trade Secrets are essential to the operation of a Waters Edge winery franchise and are related to a product or service used in, or intended for use in, interstate commerce.

80.     Waters Edge has expended significant resources in developing, compiling and maintaining the Waters Edge Trade Secrets.

81.     The Waters Edge Trade Secrets derive independent economic value from not being generally known to the public or to other persons who can obtain economic value for the disclosure or use of the Waters Edge Trade Secrets.

82.     The Waters Edge Trade Secrets are not generally known in the industry, to the public, or to others who can realize economic value from their disclosure or use. Such Trade Secrets can only be derived from expending of time, effort and money.

83.     After entering into the Franchise Agreement, Defendants came into contact with and made use of the Waters Edge Trade Secrets for the purpose of the construction and operation of their winery.   At all times herein mentioned, Defendants knew and agreed that the Waters Edge Trade Secrets constituted trade secrets belonging to Waters Edge.

84.     From the commencement of their contractual relationship with Waters Edge, Defendants agreed that the Waters Edge Trade Secrets would remain the property of Waters Edge and their use would be limited to that necessary for the performance and fulfillment of their duties as Waters Edge franchisees.

85.     The Waters Edge  Trade Secrets have been the subject of efforts, by Waters Edge, that are reasonable under the circumstances, to maintain their secrecy, including but not limited to limiting the disclosure of the Waters Edge Trade Secrets only to those persons who require said information for the operation of their franchise or performance and fulfillment of their duties at Waters Edge, by requiring such persons to execute confidentiality agreements concerning the disclosure and secrecy of the Waters Edge

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Trade Secrets, and by limiting access to the Waters Edge Trade Secrets through reasonable security measures.

86.     Waters Edge is informed and believes, and thereon alleges, that Defendants accessed, copied, converted, disclosed, and/or misappropriated the Waters Edge Trade Secrets for the use and benefit of themselves and intended to unfairly compete with Waters Edge and its other franchisees.

87.     Defendants have used and continue to use the Waters Edge Trade Secrets without authorization from Waters Edge and to the extreme detriment of Waters Edge.

88.     As a direct and proximate result of Defendants' misappropriation of the Waters Edge Trade Secrets, Waters Edge has and/or will suffer actual damages.  As a further direct and proximate result of the misappropriation, Defendants have been and/or will be unjustly enriched by obtaining or sharing in the profits unlawfully obtained.  The aforesaid damages and unjust enrichment are all in excess of the jurisdiction of this court and shall be subject to proof, at the time of trial.

89.     Waters Edge will be irreparably injured in its business and property in that, among other things, Waters Edge will continue to suffer future losses in revenues and profits, of goodwill and client acceptance until and unless Defendants' activities are permanently enjoined by order of this Court.  Waters Edge is entitled to injunctive relief prohibiting further misappropriation of the Waters Edge Trade Secrets by Defendants.

90.     As a further direct and proximate result of Defendants' above-described acts, and each of them, Waters Edge has had to engage the services of its attorneys of record and has incurred, and is still incurring, attorney's fees and costs, and is entitled to the recovery of those costs.

91.     Waters Edge is informed and believes, and based thereon alleges, that the aforementioned acts of Defendants were willful and malicious in that Defendants misappropriated the Waters Edge Trade Secrets with the deliberate intent to injure Waters Edge's business and improve their own.  Waters Edge is therefore entitled to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  punitive and exemplary damages in a sum within the jurisdiction of this court and subject
2  to proof at the time of trial.

3      92.    To the extent Waters Edge cannot or does not recover damages or unjust
4  enrichment as to the full profits made by Defendants resulting from their
5  misappropriation of the Waters Edge Trade Secrets, then Waters Edge is entitled to a
6  reasonable royalty within the jurisdiction of this court and subject to proof, at the time
7  of trial.

8      93.    Waters Edge has no adequate remedy at law for the injuries caused by
9  Defendants' conduct, acts, and omissions, and will be irreparably harmed if such acts and
10 omissions are not enjoined.  Waters Edge is entitled to injunctive relief to prohibit these
11 acts and omissions and/or continued threatened acts of Defendants to prevent such
12 irreparable harm from happening in the future.

**FIFTH CLAIM FOR RELIEF**

**Misappropriation of Trade Secrets under the**

**California Uniform Trade Secrets Act**

**(Cal. Civ. Code § 3426.1 et seq.)**

17      94.    Plaintiff restates and incorporates by reference, as if fully set forth herein,
18 the allegations of the foregoing paragraphs 1 through 93.

19      95.    To fairly compete in the winery industry, Waters Edge has developed
20 proprietary information including, but not limited to, Operations Manuals, proprietary
21 ingredients, secret formulas and recipes, methods, procedures, suggested pricing,
22 specifications, processes, materials, techniques winemaking processes or franchise
23 operations used in the operation of a Waters Edge franchise (the "Waters Edge Trade
24 Secrets").

25      96.    Waters Edge has expended significant resources in developing, compiling
26 and maintaining the Waters Edge Trade Secrets.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

97.     The Waters Edge Trade Secrets derive independent economic value from not being generally known to the public or to other persons who can obtain economic value for the disclosure or use of the Waters Edge Trade Secrets.

98.     The Waters Edge Trade Secrets are not generally known in the industry, to the public, or to others who can realize economic value from their disclosure or use. Such Trade Secrets can only be derived from expending of time, effort and money.

99.     After entering into the Franchise Agreement, Defendants came into contact with and made use of the Waters Edge Trade Secrets for the purpose of the construction and operation of their winery.   At all times herein mentioned, Defendants knew and agreed that the Waters Edge Trade Secrets constituted trade secrets belonging to Waters Edge.

100.    From the commencement of their contractual relationship with Waters Edge, Defendants agreed that the Waters Edge Trade Secrets would remain the property of Waters Edge and their use would be limited to that necessary for the performance and fulfillment of their duties as a Waters Edge franchise.

101.    The Waters Edge  Trade Secrets have been the subject of efforts, by Waters Edge, that are reasonable under the circumstances, to maintain their secrecy, including but not limited to limiting the disclosure of the Waters Edge Trade Secrets only to those persons who require same for the operation of their franchise or performance and fulfillment of their duties at Waters Edge, by requiring such persons to execute confidentiality agreements concerning the disclosure and secrecy of the Waters Edge Trade Secrets, and by limiting access to the Waters Edge Trade Secrets through reasonable security measures.

102.    Waters Edge is informed and believes, and thereon alleges, that in the course of operating their winery Defendants accessed, copied, converted, disclosed, and/or misappropriated the Waters Edge Trade Secrets for the use and benefit of themselves and intended to unfairly compete with Waters Edge and its franchisees.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

103.   Defendants have used and continue to use the Waters Edge Trade Secrets without authorization from Waters Edge and to the extreme detriment of Waters Edge.

104.   As a direct and proximate result of Defendants' misappropriation of the Waters Edge Trade Secrets, Waters Edge has and/or will suffer actual damages. As a further direct and proximate result of the misappropriation, Defendants have been and/or will be unjustly enriched by obtaining or sharing in the profits unlawfully obtained, in violation of the *California Civil Code*, § 3426, *et seq*. The aforesaid damages and unjust enrichment are all in excess of the jurisdiction of this court and shall be subject to proof, at the time of trial.

105.   Waters Edge will be irreparably injured in its business and property in that, among other things, Waters Edge will continue to suffer future losses in revenues and profits, of goodwill and client acceptance until and unless Defendants' activities are permanently enjoined by order of this Court under *California Civil Code*, § 3426.2(a). Waters Edge is entitled to injunctive relief prohibiting further misappropriation of the Waters Edge Trade Secrets by Defendants.

106.   As a further direct and proximate result of Defendants' above-described acts, and each of them, Waters Edge has had to engage the services of its attorneys of record and has incurred, and is still incurring, attorney's fees and costs, the reimbursement of which is provided for under *California Civil Code*, § 3426.1 *et seq*.

107.   Waters Edge is informed and believes, and based thereon alleges, that the aforementioned acts of Defendants were willful and malicious in that Defendants misappropriated the Waters Edge Trade Secrets with the deliberate intent to injure Waters Edge's business and improve their own. Waters Edge is therefore entitled to punitive and exemplary damages in a sum within the jurisdiction of this court and subject to proof at the time of trial and subject to the provisions of *California Civil Code*, § 3426.3(c).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

108.   To the extent Waters Edge cannot or does not recover damages or unjust enrichment as to the full profits made by Defendants resulting from their misappropriation of the Waters Edge Trade Secrets, then, pursuant to the provision of *California Civil Code* § 3426.3(b), Waters Edge is entitled to a reasonable royalty within the jurisdiction of this court and subject to proof, at the time of trial.

109.   Waters Edge has no adequate remedy at law for the injuries caused by Defendants' conduct, acts, and omissions, and will be irreparably harmed if such acts and omissions are not enjoined.  Waters Edge is entitled to injunctive relief to prohibit these acts and omissions and/or continued threatened acts of Defendants to prevent such irreparable harm from happening in the future.

### SIXTH CLAIM FOR RELIEF

### Unfair Competition Under California Business & Professions Code §§ 17200, et seq.,

110.   Plaintiff restates and incorporates by reference, as if fully set forth herein, the allegations of the foregoing paragraphs 1 through 109.

111.   Defendants, through the conduct alleged herein, have engaged in and continue to engage in trademark infringement, unlawful, unfair, and/or fraudulent conduct in violation of Section 17200, *et seq.* of the *California Business and Professions Code.* Defendants have also engaged in and continue to engage in conduct that is deceptive, untrue and misleading in violation of *California Business and Professions Code* Section 17500, which also constitutes a violation of Section 17200.

112.   As a direct and proximate result of Defendants' actions as alleged herein, Waters Edge has suffered an injury in fact and lost revenues and profits.

113.   Waters Edge has no adequate remedy at law such that monetary damages alone will not fully compensate for Defendants' blatant misconduct and unless enjoined by the Court, Defendants will continue to violate Waters Edge's rights.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

114.   As a result of the foregoing, Waters Edge is entitled to injunctive relief pursuant to *California Business and Professions Code Section* 17203.

### SEVENTH CLAIM FOR RELIEF

### California Common Law Unfair Competition

115.   Plaintiff restates and incorporates by reference, as if fully set forth herein, the allegations of the foregoing paragraphs 1 through 114.

116.   Defendants' acts complained of herein constitute common law unfair competition under the common law of the State of California.

117.   Defendants' wrongful activity as articulated above constitutes a willful intent and effort on the part of Defendants and each of them, to deceive the consuming public and government agencies.  The wrongful actions of Defendants and each of them constitutes palming or passing off in that Defendants seek to mislead the government including the consuming public into the false belief that Plaintiff is the source or has authorized the goods and services offered by Defendants, when in fact Defendants are acting without Plaintiff's consent, authority or control. The wrongful acts of the Defendants and each of them have caused and will continue to cause a likelihood of confusion as to the source, sponsorship, or approval of Defendants' services.   The complained-of wrongful conduct of Defendants have caused substantial injury to Plaintiff as alleged above, and are likely to cause further substantial injury as consumers who would purchase wine products through Plaintiff or its authorized outlets, instead will purchase those products and services from Defendants, causing competitive injury to Plaintiff and costing Plaintiff substantial lost profits.

118.   Waters Edge is informed and believes and on such information and belief alleges that Defendants' acts, as alleged herein, were taken with the intent of causing confusion, mistake, and deception as to the source of their services and improperly trading upon the reputation and goodwill of Waters Edge and impairing the valuable rights in its Waters Edge Trademarks.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

119. Defendants' acts herein were and are willful and intentional acts of unfair competition.

120. By reason of Defendants' actions, Waters Edge has suffered irreparable harm and unless Defendants are restrained from further infringement of the Waters Edge Trademarks, Waters Edge will continue to suffer irreparable harm. Waters Edge has no adequate remedy at law that will adequately compensate it for such irreparable harm if Defendants' conduct is allowed to continue.

121. As a result of Defendants' actions, Waters Edge has suffered damages in an amount to be proven at trial but which exceeds $75,000 and is entitled to attorneys' fees and costs, the profits earned by Defendants attributable to their wrongful conduct, and injunctive relief.

122. Defendants' acts as alleged herein were willful, oppressive, malicious and/or fraudulent. Accordingly, Waters Edge seeks both actual damages in tort and punitive or exemplary damages in an amount appropriate to punish and make an example of Defendants, and to deter such wrongful conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court issue the following:

1. On Count One:

   a. For compensatory damages in an amount to be proven at trial;

   b. For consequential, special, incidental, and restitution damages in an amount to be proven at trial.

   c. For preliminary and permanent injunctive relief to prevent Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, from:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4856-2990-8794.2

25

WATERS EDGE WINERIES, INC.'S COMPLAINT

      i.     Using Waters Edge's Trademarks in any manner that is likely to create the impression that Defendants' goods or services are in any way connected to Waters Edge.

      ii.    Using, disclosing or making any other use of the Waters Edge Trade Secrets to unfairly compete with Waters Edge and its franchisees.

      iii.   Operating a competing wine business (manufacture, wholesale or retail) during the term of the Franchise Agreement or within a 25-mile radius of the Missouri City location for a 2-year period.

   d.  For reasonable costs and attorneys' fees incurred in this action.

2. On Count Two, Three and Seven:

   a.  For compensatory damages in an amount to be proven at trial;

   b.  For consequential, special, incidental, punitive, and restitution damages in an amount to be proven at trial;

   c.  For preliminary and permanent injunctive relief to prevent Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, from:

      i.     Using Waters Edge's Trademarks in any manner that is likely to cause confusion and/or create the impression that Defendants' goods or services were approved or authorized by, or are in any way connected to Waters Edge; and

   e.  For reasonable costs and attorneys' fees incurred in this action 15 U.S.C. § 1117.

3. On Counts Four and Five:

   a.  For an award of damages in an amount to be determined at trial, in an amount caused by Defendants' theft and misuse of valuable trade secrets;

b. For preliminary and permanent injunctive relief to prevent Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, from using, disclosing or making any other use of the Waters Edge Trade Secrets to unfairly compete with Waters Edge or any of its franchisees.

c. For exemplary damages pursuant to the Defend Trade Secrets Act, California Uniform Trade Secrets Act.

d. For reasonable attorney's fees and costs and pre and post-judgment interest;

4. On Count Six:

a. For restitution in an amount to be proven at trial;

b. For preliminary and permanent injunctive relief to prevent Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, from:

i. Using Waters Edge's Trademarks in any manner that is likely to create the impression that Defendants' goods or services are in any way connected to Waters Edge.

ii. Using, disclosing or making any other use of the Waters Edge Trade Secrets to unfairly compete with Waters Edge and its franchisees.

iii. Operating a competing wine business (manufacture, wholesale or retail) during the term of the Franchise Agreement or within a 25-mile radius of the Missouri City location for a 2-year period.

e. For reasonable costs and attorneys' fees incurred in this action.

5. On Count Seven:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

a. For compensatory damages in an amount to be proven at trial;

b. For consequential, special, incidental, punitive, and restitution damages in an amount to be proven at trial.

c. For preliminary and permanent injunctive relief to prevent Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, from:

    i. Using Waters Edge's Trademarks in any manner that is likely to create the impression that Defendants' goods or services are in any way connected to Waters Edge.

f. For reasonable costs and attorneys' fees incurred in this action.

6. On all Counts

a. For such other and further relief as the Court may deem just and proper.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
LEO A. BAUTISTA
JOSEPHINE A. BROSAS

DATED: October 26, 2022    By:    /s/ *Leo A. Bautista*
    LEO A. BAUTISTA
    *Attorneys for Plaintiff*
    WATERS EDGE WINERIES, INC.

## DEMAND FOR TRIAL BY JURY

PLEASE TAKE NOTICE that Plaintiff Waters Edge Wineries, Inc. hereby demands a jury trial in this action.

4856-2990-8794.2

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
LEO A. BAUTISTA
JOSEPHINE A. BROSAS

DATED: October 26, 2022          By:          /s/ *Leo A. Bautista*
                                         LEO A. BAUTISTA
                                         *Attorneys for Plaintiff*
                                         WATERS EDGE WINERIES, INC.