UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WATERS EDGE WINERIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> WINE VIBES, LLC et al., <br><br> Defendants. | Case No. 5:22-cv-01883-SB-SHK <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 39] |

     Plaintiff Waters Edge Wineries, Inc. is a franchisor of combination microwineries and wine stores. Defendants Sherifat Lawal, Tamesha Hampton, and Phelicia Colvin, as the owners and members of Defendant Wine Vibes, LLC (Wine Vibes), contracted with Plaintiff to open a Waters Edge franchise. After the relationship between Defendants and Plaintiff's designated construction management firm soured, Defendants opened an unapproved microwinery and wine store. Plaintiff brought this action for claims arising from Defendants' alleged breach of the franchise agreement. Plaintiff moves for partial summary judgment on its breach of contract claim and claim for relief under California's Unfair Competition Law (Cal. Bus. and Prof. Code § 17200, or UCL). Dkt. No. 39. Since Plaintiff has not demonstrated as a matter of law on this record that it exercised reasonable business judgment in refusing to allow Defendants to build their store without the construction management firm, the Court denies the motion.

I.

A.

     Plaintiff is a franchisor that offers and sells franchises to open and operate "Waters Edge Winery & Bistro" businesses throughout the United States. Dkt. No. 39-2 (Joint Appendix of Facts, JAF) 1–2.[1] Plaintiff's franchisees operate

---

[1] Unless otherwise indicated, citations to the JAF are to undisputed facts, undisputed portions of partially disputed facts, or portions of disputed facts that do

businesses that are hybrid wineries and wine bars. JAF 9. Franchisees make and sell wine, serve food and wine, host wine tastings and private events, offer private bottle labeling, and provide wine club memberships to customers. JAF 10–11.

Lawal, Hampton, and Colvin are the owners and members of Wine Vibes. JAF 13. Plaintiff and Wine Vibes entered into a franchise agreement on January 28, 2021; Lawal, Hampton, and Colvin signed personal guarantees that same day agreeing to be bound by the franchise agreement's terms. JAF 12, 14. The personal guarantees make Lawal, Hampton, and Colvin personally liable for all payments and the performance of all obligations Wine Vibes owes Plaintiff under the franchise agreement. JAF 15. The franchise agreement and personal guarantees have not been terminated. JAF 42.

The franchise agreement authorizes Defendants to construct and operate a Waters Edge Winery & Bistro store and grants them the right to use Plaintiff's trademarks, systems, and methodologies. JAF 16, 19-20. Under the franchise agreement, Defendants are obligated to adhere to certain requirements in building the franchise location. Among other things, they are required to use Plaintiff's designated construction management firm, JAF 49; obtain Plaintiff's written consent to their building plans and proposed design and décor layout before beginning construction at the selected site, JAF 48; and name the store "Waters Edge Winery & Bistro," JAF 20. The franchise agreement also requires Defendants to participate in online training and for Wine Vibes's general manager to attend an in-person training. Dkt. No. 39-5 at 18 of 22; JAF 51. Defendants are obligated to pay Plaintiff an initial franchise fee of $50,000, plus a monthly royalty of 5% of gross sales, an added services fee of up to 5% of gross sales with a minimum payment of $250, and a monthly technology fee. Id. at 20–21 of 22; JAF 52–53.

The franchise agreement also contains a noncompete provision that (1) prohibits Defendants from directly or indirectly owning or operating any wine business other than the contemplated Waters Edge store during the agreement's term, and (2) prohibits Defendants from directly or indirectly owning or operating a wine business within 25 miles of the area designated under the franchise

---

not appear to be genuinely in dispute. *See* Dkt. No. 27 at 6 ("If a party disputes a fact in bad faith by offering evidence that does not contradict the proffered fact *or* by failing to provide a specific citation to the supporting evidence, the Court will deem the fact undisputed for purposes of the motion.").

agreement as Defendants' exclusive franchise area or within 25 miles of another Waters Edge store.  Dkt. No. 39-6 at 6–7 of 146; *see also* JAF 44–45.

After executing the agreements, Plaintiff provided Defendants with its operations manual, which included information about Plaintiff's standard procedures, specifications, policies, rules, regulations, approved suppliers, and approved supplies lists.  JAF 29.  Defendants also downloaded 130 computer files containing information about operating a Waters Edge store and participated in Plaintiff's online training sessions.  JAF 33, 35.  The parties dispute whether the online training included training on winemaking but agree that it provided information on marketing, wine tasting and presentation, accounting and financial performance enhancement, and wine club operations.  JAF 34.  Defendants did not attend the in-person training required under the franchise agreement.  JAF 60.

The parties agreed on a location for the Wine Vibes store, and Wine Vibes entered into a lease agreement with the property owner on April 13, 2021.  JAF 21, 24-25.  Around that time, Wine Vibes also entered into a contract with Plaintiff's designated construction management firm, SCGWest Development (SCG).  JAF 36–37.  Under this agreement, SCG would provide design and construction services for the franchise store, JAF 36, and Defendants and SCG would execute a construction contract at a future date.  Dkt. No. 39-6 at 145 of 146.

SCG solicited bids from contractors.  Dkt. No. 39-10 at 39 of 80.  The cheapest bid was SCG's own bid in conjunction with Maxx Builders & Designers (Maxx).  *Id*.  Defendants tried to obtain a small business loan.  The prospective lender requested certain financial, logistical, and insurance information from both Maxx and SCG before it would fund the loan.  *Id*. at 43 of 80.[2]  SCG refused to provide some of the requested information until the construction agreement was executed.  *Id*. at 45 of 80.  The bank advised Defendants not to sign the construction agreement until after the information was provided.  *Id*.  Defendants sought Plaintiff's assistance in obtaining the information, and Plaintiff persuaded SCG to provide some of it.  *Id*.  As to the remaining information, Plaintiff explained to Defendants that SCG was a separate company that it did not control.

---

[2] Plaintiff objects to this email and several others on hearsay grounds.  Dkt. No. 39-4 (Joint Appendix of Objections).  The objections are overruled because these documents appear to be offered to explain Defendants' subsequent conduct (rather than for their truth).  In any event, Plaintiff has not shown that it would be entitled to summary judgment if these documents were disregarded.

*Id*. at 50 of 80 ("I can't make anyone outside my own company . . . do something they're unwilling to do.").

Defendants then solicited a bid from Legacy Contractors (Legacy) and sought SCG's approval to use Legacy for the project. SCG told Defendants that it would agree to work with either Maxx or Legacy to complete the project. *Id*. at 35 of 80. SCG estimated that it would cost approximately $105,000 more to work with Legacy (i.e., $1,089,370.70 compared to $984,528). *Id*.

On March 10, 2022, Defendants informed SCG that it had contacted Legacy about the estimate and that they wished to proceed with the project using Legacy. Defendants attached a revised proposal from Legacy and set forth their view of the cost difference of the project based on the competing bids:

> SCG + Legacy = $990,375.75 (added $32,000 for missing scope, included contingency at 5%, and SCG fee at $42,000)
>
> SCG + Maxx = $1,054,299.00 (please note that the $984,528.00 excludes contingency of $70k approximately 71/2% in contingency)

*Id*. at 53 of 80.[3]

Two hours later, SCG responded that the SCG fee would "remain at $99,000 and the contingency will remain at 10% . . . ." *Id*. at 52 of 80. SCG also noted that Maxx's bid, when fully considered and properly calculated, was $984,528. *Id*. SCG concluded its email by stating:

> If you do not want to work with SCGWest and do not see value in our firm, we do not need to move forward. We will invoice for compensation for our time thus far, architect contract management and the off-ramp fee per our contract. I believe the total is around 60-80k and we will walk away and you can run the project yourself.

*Id*.

---

[3] Contingency refers to a line item in a construction budget to cover unexpected costs.

4

Later that day, Defendants responded that they were electing to proceed with SCG and Legacy: "We are choosing to move forward with SCG, our designed [sic] construction management firm per [Plaintiff] for $42,000. Secondly, we are moving forward to build this project with Legacy at $948,585." *Id*. at 56 of 80.

In a response email, SCG explained that Defendants had elected an option that was not available. SCG emphasized that Defendants had only three options and had to choose one of them by the next day. SCG stated (in full):

> We do not want to work with anyone that doesn't want to work with us, does not see our value or feels that we do not deserve to be paid. We cannot waste anymore [sic] time and energy debating back and forth. This is <u>your</u> choice. We respect any decision you make.
>
> 1. We build the project with Legacy for $1,089,370.70;
>
> 2. We build the project with Maxx for $984,528; or
>
> 3. You exercise the off-ramp provision, pay us for the hours/work that has been completed thus far, the contract termination fee and we go our separate ways.
>
> Please make your decision by the end of the day tomorrow, 3/11/22.

*Id*.

At the end of the business day on March 11, SCG sent a follow-up email stating that Defendants had not selected one of the three available options and that the contract had therefore ended. SCG stated:

> We have now reached the end of day on 3/11/22 without acceptance of an option that we presented. The . . . contract between Wine Vibes and SCGWest has reached its natural point of conclusion and a termination notice is not needed.
>
> * * *
>
> Thank you for the opportunity and we wish you the best of luck with the build.

5

*Id*. at 55 of 80. Plaintiff's President was copied on this series of emails. *Id*. at 53–56 of 80.

On May 2, 2022, Plaintiff denied Defendants' request to build the store using Legacy without using SCG as construction manager, stating:

> This letter will serve as our response to the request of Legacy Contractors to commence construction of the Waters Edge Winery in Missouri City, Texas. [Plaintiff] has not approved Legacy Contractors to commence construction of the Waters Edge Winery in Missouri City, Texas. [Plaintiff] has repeatedly directed Legacy Contractors to use SCG West for construction management pursuant to the terms and conditions of the franchise agreement executed by Wine Vibes and [Plaintiff]. Until and unless Legacy Contractors uses SCG West for construction management, [Plaintiff] will not approve commencement of the construction of the Waters Edge Winery in Missouri City, Texas.
>
> If Wine Vibes and Legacy Contractors commence construction without the express written approval from [Plaintiff], and or does not use SCG West for the construction management of the project, [Plaintiff] will consider this action a violation/breach of the franchise agreement and reserves all of its rights to cure this violation/breach under the remedies outlined in the franchise agreement.

*Id*. at 58 of 80.

Defendants nevertheless proceeded with building a microwinery and bistro at the designated site using Legacy without SCG. JAF 38. Their business, operating under the name Wine Vibes Micro Winery, opened in February 2023. JAF 39. Wine Vibes Micro Winery makes its own bottled wine, offers wine tasting, sells bottled wine for consumption, and has a bistro-style dining area. JAF 40. The Wine Vibes Micro Winery menu states that wine club memberships and custom wine labeling services are forthcoming. JAF 41.

Defendants do not dispute that their operations are inconsistent with numerous terms of the franchise agreement. They admit that: they opened a wine business that is not authorized under the franchise agreement, JAF 54; the Wine Vibes Micro Winery is located within 25 miles of another business using Plaintiff's system, JAF 55; their wine business uses trademarks and a trade name

6

that are not authorized by the franchise agreement or Plaintiff, JAF 56; they failed to coordinate the construction of their winery with Plaintiff, JAF 57; they failed to use SCG to build their wine business, JAF 58; they failed to submit their design and décor layout plans to Plaintiff or to obtain written approval of those plans before beginning construction on their wine business, JAF 59; they failed to attend the in-person training, JAF 60; and they failed to make payments to Plaintiff, JAF 61–62.

B.

Plaintiff's complaint brings several claims against Defendants, including claims for breach of contract, trademark infringement and false designation of origin, misappropriation of trade secrets under state and federal law, and unfair competition under California common law and the UCL. Dkt. No. 1 (Compl.). Defendants answered the complaint, but also included in the answer a section purporting to be a motion to dismiss and a separate section that included counterclaims and affirmative defenses relying entirely on factual allegations within the motion section. Dkt. No. 17. The Court struck the motion to dismiss and, since there were no factual allegations to support Defendants' asserted affirmative defenses and counterclaims, struck those as well. Dkt. No. 29. Plaintiff now moves for partial summary judgment on its breach of contract and § 17200 claims, which Defendants oppose.[4]

II.

Summary judgment is appropriate where the record, read in the light most favorable to the nonmoving party, shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" based on the issue. *Id*. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at

---

[4] Plaintiff requests that the Court take judicial notice of previous docket entries in this case or contracts that are in the summary judgment record. Because judicial notice is not necessary in this circumstance, the request is DENIED.

255. But if the evidence of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249–50.

The burden is first on the moving party to show an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party satisfies this burden either by showing an absence of evidence to support the nonmoving party's case when the nonmoving party bears the burden of proof at trial, or by introducing enough evidence to entitle the moving party to a directed verdict when the moving party bears the burden of proof at trial. *See id*. at 325; *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). If the moving party satisfies this initial requirement, the burden then shifts to the nonmoving party to designate specific facts, supported by evidence, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. If the nonmovant "fails to properly address another party's assertions of fact as required by Rule 56(e), the court may . . . consider the fact undisputed for the purposes of the motion [or] . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### III.

The Court first addresses whether Plaintiff is entitled to summary judgment on its breach of contract claim. The parties dispute whether Plaintiff is entitled to summary judgment on the merits of its claim and whether the franchise agreement's noncompete provisions are enforceable.

To prevail on a cause of action for breach of contract, a plaintiff must prove: "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Defendants do not dispute that the franchise agreement is a valid contract between the parties, that they did not comply with its terms, and that Plaintiff has suffered damages. Defendants dispute that Plaintiff performed under the franchise agreement, however, arguing that Plaintiff breached the agreement's implied covenant of good faith and fair dealing.[5]

---

[5] Plaintiff argues that Defendants cannot raise this argument because they have not pleaded any affirmative defenses or counterclaims. *See* discussion *supra*. It appears, however, that Defendants are challenging whether Plaintiff has satisfied

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc.*, 2 Cal. 4th 342, 371 (1992) (citing Restatement (Second) of Contracts § 205 (Am. L. Inst. 1981)).  The duty to perform under a contract in good faith "finds particular application in situations where one party is invested with a discretionary power affecting the rights of another.  Such power must be exercised in good faith." *Id*. at 372.  However, the duty "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000).  Accordingly, it "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id*. at 349–50.

Defendants argue that Plaintiff failed to perform under the franchise agreement (1) when Plaintiff did not require SCG to provide the financial information that their lender requested and (2) when Plaintiff refused to approve Defendants' use of Legacy to build their store without SCG's involvement.  Defendants conclude that these actions frustrated their ability to comply with the franchise agreement, and therefore that Plaintiff has not proven as a matter of law that it fulfilled its own obligations under the franchise agreement as required to sustain its breach of contract claim.

The first alleged act of nonperformance fails because Defendants have not shown that Plaintiff had a contractual obligation to require SCG to provide information to the lender.  The franchise agreement's express terms do not impose upon Plaintiff a duty to control SCG's conduct.  While the franchise agreement requires Defendants to use Plaintiff's designated construction management firm, there is no provision imposing any duty on Plaintiff to obtain the performance of a third party with whom Defendants have separately contracted.  Dkt. No. 39-5 at 12 of 22.  Therefore, Plaintiff's failure to require SCG to satisfy Defendants' lender's request for information does not support Defendants' theory that Plaintiff violated the implied covenant.

However, the Court is unable to conclude as a matter of law on this record that Plaintiff performed its contractual obligations when it required Defendants to

---

an element of its claim, arguing that Plaintiff has not performed under the contract as required.  Thus, the Court considers the argument on the merits.

use SCG to build the store after SCG terminated its relationship with Defendants. Although Defendants raise their challenge in terms of the implied covenant of good faith and fair dealing, since the designation of a construction firm lies within Plaintiff's discretion under the franchise agreement, the reasonable business judgment standard applies.  Dkt. No. 39-6 at 16 of 146.  The franchise agreement provides that whenever Plaintiff has "a certain right, that right is absolute and the parties intend that [Plaintiff's] exercise of that right will not be subject to any limitation or review."  Dkt. No. 39-6 at 16 of 146.  When Plaintiff has "discretion in a particular area or where [Plaintiff] agree[s] to exercise [its] rights reasonably or in good faith, [it] will satisfy [its] obligation[] whenever [it] exercise[s] Reasonable Business Judgment in making [its] decision or exercising [its] rights." *Id*.  The parties agreed that Plaintiff's reasonable business judgment refers to actions taken to promote or benefit Plaintiff's franchise system generally.  *Id*. at 16–17 of 146.

The contractual question, therefore, is whether Plaintiff exercised its reasonable business judgment in requiring Defendants to work with SCG after SCG severed their relationship.  *See Carma Developers*, 2 Cal. 4th at 374 (noting that "implied terms should never be read to vary express terms").  Plaintiff has not shown that it exercised its reasonable business judgment based on the summary judgment record.  Plaintiff fails to explain why its demand that Defendants work with SCG was reasonable when SCG terminated its agreement with Defendants—as Plaintiff knew from being copied on SCG's termination email.  Drawing all reasonable inferences in Defendants' favor, the Court is unable to conclude that Plaintiff exercised reasonable business judgment as a matter of law.[6]

Accordingly, Plaintiff has not demonstrated that it is entitled to summary judgment on its breach of contract claim.  Since the Court does not find that Plaintiff has proven a breach of contract, it does not reach the parties' dispute about the enforceability of franchise agreement's noncompete provisions under Texas law.  *See* Tex. Bus. & Comm. Code § 15.50 (requiring an otherwise enforceable agreement to enforce a noncompete provision).

---

[6] At the hearing, Plaintiff's counsel requested leave to supplement the summary judgment record to address this factual issue, and the Court permitted the parties to submit competing offers of proof on the proposed supplement.  While Plaintiff's proffer demonstrates that there is much more to this story, the Court declines to reopen the motion—which would require the submission of additional evidence, further briefing, and another tentative ruling and round of argument.

IV.

Plaintiff also moves for summary judgment on its UCL claim. To succeed on a UCL claim, a plaintiff "must establish that the [challenged] practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)." *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007) (internal quotation omitted). Unlawful conduct is conduct that violates another federal or state law or regulation. *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1155 (2018). California courts have not settled on a uniform test for unfair conduct, but it generally involves harm to competition. *See, e.g.*, *Cel-Tech Commc'ns v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) ("unfair" conduct implicates potential antitrust violation "or otherwise significantly threatens or harms competition"). A contractual breach alone (i.e. without conduct that is also unlawful, unfair, or fraudulent) does not violate the UCL. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) (quoting *Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003)). To establish standing under the UCL, a plaintiff must have suffered economic injury that was caused by the unfair business practice giving rise to the claim. *Davis v. RiverSource Life Ins. Co.*, 240 F. Supp. 3d 1011, 1017 (N.D. Cal. 2017).

In its reply, Plaintiff suggests that its UCL claim is based on the purportedly unfair conduct of Defendants' opening of an unauthorized wine business after receiving training and information from Plaintiff despite agreeing to a noncompete agreement. Dkt. No. 43 at 9 of 11. Plaintiff's theory presupposes that the franchise agreement is enforceable. As explained above, Plaintiff has not proven that the agreement is enforceable as a matter of law. Accordingly, Plaintiff is not entitled to summary judgment on its UCL claim as framed.

## V.

Since Plaintiff has not demonstrated that it is entitled to judgment as a matter of law on its breach of contract and UCL claims, the Court DENIES Plaintiff's motion for partial summary judgment.[7]

Date: June 29, 2023

Stanley Blumenfeld, Jr.
United States District Judge

---

[7] Since Plaintiff has not proven success on the merits of its claims, the Court does not reach the parties' dispute about injunctive relief.